DECISION ON OBJECTIONS TO THE MAGISTRATE'S DECISION
{¶ 1} Relator, Gale T. Haley, has filed an original action in mandamus requesting this court to issue a writ of mandamus to order respondent, Industrial Commission of Ohio, to vacate its order that denied reinstatement of compensation for temporary total disability, and to issue a new order granting such compensation.
 {¶ 2} This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Section (M), Loc.R. 12 of the Tenth District Court of Appeals, who rendered a decision including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate decided that a writ of mandamus should be granted to order the commission to vacate its order and to issue a new order granting or denying such compensation in accordance with the requirements of State ex rel. Mitchell v. Robbins Myers, Inc. (1983), 6 Ohio St.3d 481; and State ex rel. Noll v.Indus. Comm. (1991), 57 Ohio St.3d 203. Relator has objected to the magistrate's decision.
 {¶ 3} In his objections, relator contends that he is entitled to relief pursuant to State ex rel. Gay v. Mihm (1994),68 Ohio St.3d 315. We disagree. In Gay, the Ohio Supreme Court held that, where there was no evidence in the record that could support a finding that the claimant was not permanently totally disabled, it was an exercise in futility to remand the matter to the commission. Here, relator is requesting two different periods of temporary total disability compensation with different evidence and a different rationale to support each period of compensation. As the magistrate noted, the commission's order is unclear as to which period of time is addressed or whether both periods of temporary total disability are being denied for the same reasons.
 {¶ 4} Therefore, upon a review of the magistrate's decision and an independent review of the record, this court adopts the magistrate's decision as its own. Relator's objections to the magistrate's decision are overruled, and this court grants a writ of mandamus to order the Industrial Commission of Ohio to vacate its order denying relator's request for reinstatement of temporary total disability compensation and to issue a new order which meets the requirements of Mitchell and Noll.
Objections overruled, writ of mandamus granted.
Watson and Sadler, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Gale T. Haley, : Relator, : v. : No. 03AP-475 GM National Benefit Center and : (REGULAR CALENDAR) Industrial Commission of Ohio, : Respondents. :
 MAGISTRATE'S DECISION Rendered on October 31, 2003 IN MANDAMUS {¶ 5} In this original action in mandamus, relator, Gale T. Haley, asks the court to issue a writ compelling respondent Industrial Commission of Ohio ("commission") to vacate its order denying reinstatement of compensation for temporary total disability compensation ("TTD") and to issue an order granting the requested TTD.
 Findings of Fact {¶ 6} 1. In July 1988, Gale T. Haley ("claimant") was working for a vehicle manufacturer as a spray painter (hand spraying car bodies, including wheel wells and bumpers), when he developed right carpal tunnel syndrome. His self-insured employer, GM National Benefit Center, certified a workers' compensation claim for that condition. Claimant received TTD compensation based on right carpal tunnel syndrome from January 1991 to April 1991, and again from June 1991 to October 1991.
 {¶ 7} 2. In December 1991, claimant was working at a "bushing job" (holding the bushing with his left hand while hammering with his right hand), when he was diagnosed with left carpal tunnel syndrome. The commission allowed a second claim for this condition in September 1992. Claimant received TTD compensation based on the left carpal tunnel syndrome from May 1992 to July 1992.
 {¶ 8} 3. In March 1995, claimant was awarded a six percent permanent partial disability compensation ("PPD") based on right carpal tunnel syndrome (the 1988 claim). In March 1995, claimant was also awarded a six percent PPD based on left carpal tunnel syndrome (the 1991 claim).
 {¶ 9} 4. In September 1995, claimant underwent surgery for a right carpal tunnel release. TTD was paid from September 1995 to January 1996.
 {¶ 10} 5. In January 1996, claimant underwent surgery for a left carpal tunnel release. He received TTD from January 1996 through March 1996. Claimant then returned to work.
 {¶ 11} 6. The next record of treatment is in May 2001. On May 15, 2001, claimant visited his former surgeon, Enrique C. Martinez, M.D., complaining that he was experiencing a severe recurrence of symptoms of his right hand following a transfer to new duties at work. Dr. Martinez noted in claimant's chart:
This patient is here stating that he was transferred to a different job in which he has to use a spray bottle. He states that using the spray bottle produces pain on the R thumb * * *. The patient states that once he stopped doing the job the thumb has felt better. * * * The carpal tunnel release has been feeling good since the patient has been kept on the restrictions. The examination shows an enlarged mass at the MP joint of the R thumb volarly indicating a trigger thumb with a triggering mechanism present. * * *
IMPRESSION: Improving trigger thumb.
RECOMMENDATIONS: Observation, massage and splinting. We will reevaluate the patient in six months or before if so necessary.
(Emphasis added.)
 {¶ 12} 7. On August 21, 2001, claimant again visited Dr. Martinez, who noted:
Mr. Haley is back here regarding the carpal tunnel. He states that the type of work he has been placed in at this point is making his hand so sleepy and numb that he cannot use them at all after about a half an hour on the job. As a result of this the patient was advised that we will need to get a new EMG study tosee if there is a recurrence of the problem. The patient was explained that he waited so long to have the carpal tunnel released before that I don't believe that the changes within the nerve were changed and will not be changed at all. He was advised to continue with the night splint and reevaluation upon completion of the EMG study. Of course this is a workman's compensation case so he is going to need a C-9 for approval of the EMG study.
(Emphasis added.)
 {¶ 13} 8. On August 24, 2001, Dr. Martinez stated:
This patient is back here stating that General Motors didn't want to let him continue not working without being reevaluated for the possibility of other jobs. It was explained to the patient that he can do a job as a sweeper as long as he wears the splint. The patient wants to have the EMG done to see where he stands before returning to work. We will reevaluate him upon completion of the EMG study.
 {¶ 14} 9. On August 24, 2001, Dr. Martinez completed a C-84 form certifying TTD commencing August 24, 2001, based on diagnostic code "354," which is carpal tunnel syndrome. On the form, Dr. Martinez stated that claimant had not reached maximum medical improvement ("MMI"), and he comment as follows:
Pt states that the type of work he is currently doing is making the hand sleepy numb. Pt is to have an EMG study. Continue wearing night splint. Reeval upon completion of EMG.
In addition, Dr. Martinez stated that claimant could perform work as a sweeper as long as he wore a splint.
 {¶ 15} 10. On September 10, 2001, claimant completed an application for disability benefits through an insurance program. On the form, he stated that his first full day of absence from work was August 23, 2001, and that the cause of the disability was "bilateral c[a]rpal tunnel syndrome of both hands."
 {¶ 16} 10(a). On this insurance claim form, Dr. Martinez completed the physician's portion. He stated that claimant had initially consulted him for these conditions in 1995 and 1996, and he explained that claimant had experienced a "reoccurence of sym[ptoms]" preventing him from performing his usual occupation but not disabling him from all occupations.
 {¶ 17} 10(b). On the employer's portion of the insurance form, Linda Hodgson stated on September 12, 2001, that claimant was an "assembler" and had been absent since August 23, 2001. When asked whether the employer had any "light duty available," Ms. Hodgson wrote a response consisting of a short word that appears to begin with the letter "N."
 {¶ 18} 10(c). Claimant asserts that the employer's response says "None." The employer argues that Ms. Hodgson's response, although difficult to read, states "Yes."
 {¶ 19} 11. On September 25, 2001, an EMG testing was performed on claimant's upper extremities. The examining pathologist concluded:
Chief Complaint: Bilateral hand numbness.
History of Present Illness: Mr. Haley is a 45 year old gentleman with a history of bilateral carpal tunnel releases who began experiencing a recent gradual onset of numbness involving all five digits of both hands. He said it feels "Like my carpaltunnel has come back." * * *
Impression:
* * * Moderate carpal tunnel syndrome bilaterally with mild axonal involvement.
* * * Possible ulnar nerve entrapment near the Guyon's canal on the [L].
(Emphasis added.)
 {¶ 20} 12. Claimant returned to work in late September 2001, subject to medical restrictions related to his current symptoms.
 {¶ 21} 13. In regard to the medical restrictions, it appears that a dispute or discussion arose about them. Apparently, the employer's medical department issued restrictions that caused concern to Dr. Martinez, or the employer interpreted Dr. Martinez's restrictions in a manner that caused concern. In any event, on January 8, 2002, Dr. Martinez wrote to the employer's plant physician:
* * * [A]s you may or may not be aware, [claimant] became symptomatic again with the problems on both hands. In view of this[,] new EMG's were done * * * which indicate the patient's need for the restrictions to be applied properly so that he does not aggravate the symptoms and make the findings on the EMG or clinically, worse.
On your form indicating the notice of restrictions given to Mr. Haley dated 11-07-01, the patient had limited forceful grip and grasping with the left/right hands. However, this is not as specific as to how much torque force is being applied to either hand when using this equipment. It is the same if the patient has limitation on lifting 10 pounds which I feel should be dropped to 5 pounds per hand at this point which makes it a total of 10 pounds. However, the torque force applied to the grip or grasp has to be equally applied but no higher than 10 pounds.
Of course the power tools are not to be used by this patient since this will trigger aggravation on both medial nerves of the right and left hands. The hammers are not to be used, no sanders, spray guns or sealant guns again because the torque forces on these tools is normally greater than the 5 pounds per hand required.
I do hope that on Mr. Haley's behalf these restrictions can be properly applied so that he doesn't have further sympto-matology that may require surgery on his hands. * * *
 {¶ 22} 14. On February 19, 2002, Dr. Martinez completed a form noting that claimant had physical restrictions but could return to work within those restrictions:
Previous restrictions apply for 6 more months. No lifting, pushing or pulling more than 5 pounds, no forceful gripping more than 5 pounds. Between the dates of 2-19-02 through 8-19-02.
 {¶ 23} 15. Claimant returned to work, but, as documented by the company's placement office, the employer had no work for him as of February 26, 2002: "Employee Gale Haley * * * was sent out of the plant because no jobs were available within his/her restrictions."
 {¶ 24} 16. On March 18, 2002, Dr. Martinez completed another C-84 form certifying TTD based on carpal tunnel syndrome. He stated that claimant had not yet reached MMI and estimated a return to work on June 1, 2002. Dr. Martinez also stated:
Pt here because the restric[tions] given by me were overridden by the doc @ GM. It was explained to pt. that I could only reinstate previous restric[tions], thereafter GM could not accommodate these restric[tions] so no job available for patient @ this time.
 {¶ 25} 17. In March 2002, claimant filed a motion requesting reinstatement of TTD from August 23, 2001 to September 28, 2001, based on both conditions. Claimant also requested TTD beginning February 26, 2002 based on bilateral carpal tunnel syndrome. The first period of TTD was based on a flare-up of his bilateral carpal tunnel syndrome caused by new job duties. The second period of TTD was based on the argument that the employer stopped providing alternative work as of February 26, 2002.
 {¶ 26} 18. In March 2002, claimant was examined on behalf of the employer by Paul T. Hogya, M.D., who concluded that claimant must wear braces on both wrists and was restricted to lifting ten pounds overhead and only occasional use of hand tools. Accordingly, Dr. Hogya opined that the allowed conditions prevented claimant from returning to his former position of employment as a painter or assembly worker. However, Dr. Hogya found that claimant had reached MMI.
 {¶ 27} 19. On May 13, 2002, a district hearing officer ("DHO") granted claimant's motion in part:
* * * The claimant seeks an award of [TTD] compensation benefits for an initial closed period from 8/23/2001 through 9/28/2001 and another period commencing on 2/26/02 and continuing through an estimated 6/1/02. The claimant seeks * * * benefits divided equally between both files.
It is the finding of the District Hearing Officer that the claimant suffered a flare-up/exacerbation of the allowed conditions in both claims resulting in a new period of [TTD] compensation.
The District Hearing Officer finds that the claimant was unable to return to and perform the duties of his former position of employment for the periods from 8/23/01 through 9/28/01 and from 2/26/02 through 5/12/02 as a result of a flare-up of the allowed condition in this claim.
[TTD] compensation benefits are payable for these two periods of time * * *.
The claimant's * * * benefits are ordered apportioned equally between the two claims.
It is the further finding of the District Hearing Officer that the allowed condition in this claim has reached maximum medical improvement. It is therefore the further finding and order of the District Hearing Officer that the claimant's [TTD] compensation benefits are hereby terminated effective 5/13/2002.
* * *
This finding and order is based upon the claimant's testimony at hearing describing his work duties, the medical reports of Dr. Martinez, including his report dated 3/18/02, his report dated 1/8/02, his restrictions dated 2/19/02, and his office note dated 8/21/01, the EMG results from 9/25/01, and the independent medical report of Dr. Hogya, dated 5/3/2002.
 {¶ 28} 20. In June 2002, a staff hearing officer ("SHO") denied claimant's motion:
The Staff Hearing Officer finds that the claimant has not submitted evidence of new and changed circumstances in the allowed conditions which would warrant reinstatement of [TTD] compensation. Therefore, the claimant's request for the reinstatement of [TTD] compensation is denied. Dr. Martinez's office note does not expect any changes in the allowed condition.
This order is based upon the medical report of Dr. Martinez 08/21/2001.
 {¶ 29} 21. Further appeal was denied, as was reconsideration.
 Conclusions of Law {¶ 30} Two different periods of claimed TTD are at issue in the present action. First, claimant requested reinstatement of TTD for the closed period from August 23, 2001 to September 28, 2001. This request for TTD was based on a flare-up of bilateral carpal tunnel syndrome caused by a change in work assignment in spring 2001. That period of TTD compensation, if granted, would necessarily terminate on September 28, 2001 because claimant returned to work.
 {¶ 31} Second, claimant requested an open-ended reinstatement of TTD beginning on February 26, 2002, because the employer stopped providing alternative work within his medical restrictions. This second period of TTD, if awarded, would be subject to termination on grounds of MMI pursuant to Dr. Hogya's report. (The DHO had terminated the second period of TTD compensation based on MMI, but the SHO's complete denial of TTD mooted the issue of MMI.)
 {¶ 32} Under Ohio law, it is well established that a termination of TTD does not preclude a reinstatement of compensation if circumstances change and the claimant experiences a flare-up of a permanent condition — or a relapse after a return to work — that again causes temporary and total disability. See R.C. 4123.56(A). In State ex rel. Bing v. Indus. Comm. (1991),61 Ohio St.3d 424, the condition had been found permanent, and the court relied on the commission's continuing jurisdiction under R.C. 4123.52 to reinstate TTD when there are new and changed circumstances, such as a flare-up or exacerabation of the condition that had previously reached MMI. Similarly, the court stated in State ex rel. Navistar Internatl. Transp. Corp. v.Indus. Comm. (1993), 66 Ohio St.3d 267, that, where TTD compensation had ceased on the basis of the ability to return to work, a subsequent relapse can warrant a reinstatement of TTD pursuant to R.C. 4123.52. Further, after the injured worker reaches MMI or has returned to work, a disabling surgery can constitute new and changed circumstances that warrant a period of reinstated TTD until the claimant has recuperated from the surgery. State ex rel. Chrysler Corp. v. Indus. Comm. (1998),81 Ohio St.3d 158.
 {¶ 33} In Bing, Navistar, and Chrysler, the repeated requirement was that the claimant must demonstrate a functional change in his medical condition. Further, in order for TTD to be reinstated, the court made clear that the disability must not only be total (preventing performance of the former position of employment) but must also be temporary (not yet having reached MMI). Under Ohio Adm. Code 4121-3-32(A)(1), MMI is a status where no improvement or "fundamental functional or physiological change" can be expected from further treatment.
 {¶ 34} Therefore, in cases where there is no newly allowed condition on which to base a new period of TTD compensation, TTD compensation can be reinstated where the claimant establishes a change in circumstances such as a flare-up or relapse of the allowed condition that causes a new period of disability that is temporary and total. See Bing; Navistar; Chrysler; State exrel. Provost v. Indus. Comm., Franklin App. No. 02AP-424, 2002-Ohio-7199, at appendix A; State ex rel. Josephson v. Indus.Comm., Franklin App. No. 02AP-823, 2003-Ohio-1673, at ¶ 36;State ex rel. Parnell v. Indus. Comm., Franklin App. No. 02AP-699, 2003-Ohio-2308, at ¶ 27.
 {¶ 35} The magistrate notes that, when the Bing case was proceeding through administrative channels and then through the courts in mandamus, the legislature amended R.C. 4123.56(A) in 1986, adding this provision:
* * * "The termination of temporary total disability, whether by order or otherwise, does not preclude the commencement of temporary total disability at another point in time if the employee again becomes temporarily totally disabled." * * *
Bing, at fn. 1.
 {¶ 36} The new provision did not apply in Bing because the request for TTD was filed before the amendment was effective. However, the Ohio Supreme Court observed that this amendment simply made explicit a rule of law that was already present implicitly in R.C. 4123.52. Id. Therefore, the new statutory provision in R.C. 4123.56(A) did not change the prevailing law but merely spelled it out explicitly in the statute, and, accordingly, the amendment is consistent with and incorporates the rule of law explained in Bing.
 {¶ 37} Claimant argues, however, that under the current version of R.C. 4123.56(A), a claimant who seeks a reinstatement of TTD compensation is not obliged to show new and changed circumstances but must only show that he has again become temporarily totally disabled. Specifically, claimant argues that the commission commits an abuse of discretion by requiring a claimant to prove new and changed circumstances for reinstatement because the statute merely requires him to prove a flare-up of his allowed condition.
 {¶ 38} The magistrate concludes, however, that proving a flare-up is the same as proving new and changed circumstances — that proof of a flare-up constitutes proof of new and changed circumstances, and that, therefore, the proposed distinction has no practical effect. The reinstatement provision added in 1986 necessarily requires that some type of change in circumstances has occurred, because the claimant has "again" become temporarily and totally disabled after a period of not being temporarily disabled. For example, where TTD was previously terminated because the allowed condition reached MMI, and where the injured worker subsequently claims that he has "again" become temporarily and totally disabled, then some sort of change must have occurred as a matter of logical necessity. Similarly, if TTD was terminated because the injured worker returned to work, and he now seeks TTD because he is "again" temporarily unable to perform his job, then it logically follows that some kind of change took place.
 {¶ 39} In sum, the amendment to R.C. 4123.56(A) authorizes reinstatement of TTD for situations where something has occurred to cause the claimant to be temporarily and totally disabled "again," and this includes a flare-up, relapse, or exacerbation of an allowed condition. As the Supreme Court observed in Bing,
the newly added provision in R.C. 4123.56(A) goes hand in hand with the requirements of continuing jurisdiction in Bing. Thus, when the commission requires a claimant to show a change in circumstances for reinstatement of TTD, the commission is not imposing a burden beyond what the statute sets forth. In the present action, the magistrate finds no abuse of discretion in the commission's standard for reinstatement of TTD that required the claimant to show a change in circumstances since TTD compensation ceased.
 {¶ 40} However, the magistrate concludes that the commission's explanation of its decision under that standard was insufficient to satisfy the commission's duty to explain its rationale and cite the evidence in support. See, e.g., State exrel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203.
 {¶ 41} In the present action, the evidence is undisputed that, beginning in 1995, TTD compensation was paid while claimant was recovering from his surgeries in 1995 and 1996 for the allowed conditions. After claimant recovered from the 1996 surgery, he returned to work, and TTD was properly terminated.
 {¶ 42} After more than four years, claimant returned to his surgeon in 2001 complaining of a recurrence of symptoms, explaining that he had been transferred to new duties that caused a flare-up. Dr. Martinez reported that "the type of work he has been placed in at this point" was making claimant's right hand so numb that he could not perform his duties after 30 minutes of work. In addition, the EMG examiner described a recent recurrence of symptoms from both allowed conditions.
 {¶ 43} Dr. Martinez's report of May 2001 states that the thumb of the right hand used for the spray trigger was "improving." However, in his report of August 21, 2001, the doctor's statements are ambiguous regarding the temporariness of claimant's condition. Dr. Martinez again indicates that the current work assignment is causing the recent symptoms, suggesting that a change in assignment could resolve the symptoms. However, he also discusses surgery, indicates in a somewhat garbled discussion that, because claimant waited so long to have the carpal tunnel releases in 1995 and 1996, there was nerve damage that was not changed by the surgery and would not be changed. However, Dr. Martinez then states that an EMG study is necessary "to see if there is a recurrence of the problem," indicating his uncertainty of the medical status until further investigation was completed. Claimant was advised to continue with the splinting that had been prescribed in May 2001, which may or may not indicate a belief that some improvement was possible with continuation of that treatment.
 {¶ 44} Nonetheless, the subsequent reports clarify the ambiguity in the August 2001 chart notation. See, generally,State ex rel. Eberhardt v. Flxible Corp. (1994),70 Ohio St.3d 649; Chrysler Corp., supra. The subsequent C-84 reports state unequivocally and repeatedly that the flare-up caused by the new assignment had not yet reached MMI. The letter to the employer in January 2002 states that the injured worker's symptomatology will continue unless the employer complies with the medical restrictions, and this statement indicates that, conversely, symptomatology can be expected to subside if the restrictions are properly applied. The magistrate concludes that the August 2001 notation on which the commission relied was equivocal but was followed by reports that resolved the ambiguity. Accordingly, the magistrate finds that the commission's reliance solely on the August 2001 notation was an abuse of discretion.
 {¶ 45} Second, the magistrate notes that the two different periods of TTD that claimant requested were each based on different grounds, as discussed above. The first period of TTD beginning in August 2001 was based on an alleged flare-up of carpal tunnel syndrome caused by new duties that required repetitive motion of the hand/wrist; the second period of TTD beginning in February 2002 was based on the abrupt discontinuation of alternative work.
 {¶ 46} Because two different reinstatements of TTD were at issue, claimant had to prove a change in circumstances for each one, and prove totality and temporariness for each period of time. Although claimant set forth different rationales for the two separate reinstatements, the commission failed to address each request and did not distinguish between the two different requests for TTD. Consequently, the court cannot determine which period of TTD may be addressed by the commission's order or whether both periods of TTD are being denied for the same reason or reasons. The order fails to comply with Noll, supra.
 {¶ 47} The commission's order also fails to provide an adequate explanation of its rationale in another respect. The order contains two sentences setting forth the rationale for denying TTD, and each sentence appears to state a different rationale. The initial sentence states that claimant "has not submitted evidence of new and changed circumstances in the allowed conditions which would warrant reinstatement," and the latter sentence suggests that claimant had reached MMI. The only citation of evidence is to Dr. Martinez's office note of August 21.
 {¶ 48} It is not possible to tell whether the first finding applies to the first period of TTD and the second finding applies to the second period of TTD, or whether the first finding applies to both requests and the second finding was merely an alternative, additional basis, or whether some other reasoning was intended.
 {¶ 49} The first rationale indicates a failure to file evidence of new and changed circumstances, a finding that is not supported by the record. Not only does the August 2001 report cited by the commission set forth a specific and clear allegation of new and changed circumstances, but numerous other reports assert that there were new and different duties at work that caused an aggravation and increased impairment. Although the commission has discretion to reject evidence of new and changed circumstances that a party has submitted, here the commission stated that none was submitted, which is patently incorrect. Further, the August 2001 report of Dr. Martinez does not appear to relate to claimant's grounds for the second request for TTD commencing in February 2002. Thus, neither of the two determinations is supported, as required by Noll and State exrel. Mitchell v. Robbins Myers, Inc. (1983), 6 Ohio St.3d 481, by a citation to "some evidence" and a brief explanation that was within the commission's discretion.
 {¶ 50} In summary, the magistrate concludes, first, that the commission abused its discretion in basing its finding of MMI solely on a report that is ambiguous as to MMI, and, second, that the commission abused its discretion in failing to comply withNoll's requirement that it cite some evidence and provide a brief explanation of its reasons for denying the two requests for TTD compensation.
 {¶ 51} Last, respondents argue that claimant was not eligible for a reinstatement of TTD in August 2001 because he was able to perform alternative work and refused to accept alternative work offered by the employer. The magistrate notes that the doctor's notation on August 24, 2001, states only that the employer had informed claimant of a "possibility" of other jobs and that the doctor had indicated that claimant could do a job as a sweeper as long as he wore a splint on the hand aggravated by using the spray bottle. However, the record in mandamus does not include a definite offer of suitable employment and, moreover, the commission did not purport to deny TTD on the grounds that claimant declined an offer of suitable employment. Accordingly, the magistrate concludes that the court need not decide this issue in mandamus.
 {¶ 52} The magistrate recommends that the court grant a limited writ of mandamus returning this matter to the commission to vacate its order denying reinstatement of TTD and to issue a new order, granting or denying the requests in compliance with the authorities cited herein.